# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL PALMER,<br>    Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY,<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 17-826 |

## MEMORANDUM OPINION

This is a coverage dispute between Plaintiff, Joel Palmer, and Defendant, Twin City Fire Insurance Company ("Twin City") stemming from Twin City's withdrawal of its defense of Palmer in an underlying action against him. Twin City insured Bella Vista Town Watch, Inc., ("Bella Vista"), where Palmer was on the Board of Directors. Palmer, Bella Vista, and others were sued in connection with their alleged attempts to file a conservatorship petition over a property in the Bella Vista neighborhood of Philadelphia. After the court dismissed Bella Vista from the underlying action, Twin City withdrew its defense of Palmer. Palmer then filed this action for breach of contract, declaratory judgment, and bad faith. Twin City filed a Motion to Dismiss the Complaint, which the Court converted to a Motion for Summary Judgment upon notification to the parties and receipt of supplemental briefing. The question before the Court is: whether the underlying court's dismissal of Bella Vista with prejudice constitutes "absolutely clear" evidence that there is no possibility that Palmer was covered under Bella Vista's insurance policy. For the reasons stated below, Twin City's Motion for Summary Judgment is granted and Palmer's claims are dismissed.

## I. UNDISPUTED FACTS

Joel Palmer became involved with Bella Vista, a civic organization for the Bella Vista Neighborhood, in 2007. In the four or five years which followed, Palmer served in various roles within the Bella Vista organization including as President and Vice President. Palmer resigned as Vice President of Bella Vista in July, 2011. The parties agree that Palmer resigned from the Board before March 10, 2012.

*Underlying Action*

This date is critical because on March 10, 2012, Palmer and Scioli Turco, Inc. ("SCI") filed a conservatorship petition ("Petition") over 614 Kater Street. The property is owned by Paul Mikalic and Toni Lomax ("Underlying Plaintiffs"). Though Palmer's Petition was ultimately denied, the Underlying Plaintiffs filed a complaint ("Underlying Complaint"), alleging that the Petition contained nearly a dozen false statements. The Underlying Complaint named Palmer, SCI, Palmer's attorney Richard Vanderslice, Richard Vanderslice, P.C., and Bella Vista as defendants. The Underlying Plaintiff's theory was that Palmer conspired with the other named defendants to place 614 Kater Street in conservatorship as "the first step in [his] plan to run the owner of 612 Kater out of the neighborhood." The claims made were: (1) wrongful use of civil proceedings in violation of 42 Pa. Stat. Ann. § 8351; (2) concert of action; (3) conspiracy; (4) piercing the corporate veil; and (5) abuse of process.

The Underlying Complaint contained just a few allegations concerning Bella Vista. First that "[f]rom 2007 onward, Palmer was actively involved in Bella Vista, attending meetings, participating on the board, and making proposals; second, that "[a]t some point between 2007 [and] 2011, Palmer was the President of Bella Vista;" third, that Palmer filed the Conservatorship Petition "with the tacit approval of Bella Vista, who had previously resolved to

support the neighbors against 612 Kater;" and, last, that Bella Vista conspired with Palmer to obtain a conservatorship over 614 Kater Street.

Bella Vista filed Preliminary Objections to the Underlying Complaint, contending that it was not involved in the filing of the conservatorship. Palmer also filed Preliminary Objections raising other defenses. The court in the Underlying Action sustained Bella Vista's Preliminary Objection, dismissing all claims against Bella Vista with prejudice. It overruled Palmer's objections, but did so without opinion or any explanation for its decision.

After the court sustained Bella Vista's objections, Palmer filed an answer to the Underlying Complaint. In it, he responded to allegations concerning Bella Vista that "Palmer's involvement with [Bella Vista] is not relevant for the purposes of Plaintiffs' claim related to [the Conservatorship Petition]."

The case proceeded to trial. The jury returned a verdict in favor of the Underlying Plaintiffs and against Palmer, SCI, Vanderslice, and Richard Vanderslice, P.C. in the amount of $277,000 including attorney's fees, emotional damages, and punitive damages. Bella Vista, which had been entirely dismissed from the case, was not on the verdict sheet.

*Coverage Dispute*

Twin City provided insurance coverage for Bella Vista, including a $1 million Directors, Officers, and Entity Coverage policy. The relevant portion of the policy provided that Twin City shall "pay Loss on behalf of any Insured Person . . . for a Wrongful Act by the Insured Person. . . ." An Insured Person includes any person "duly elected or appointed" to the Board of Bella Vista. A Wrongful Act is defined as any breach of duty "committed by an Insured Person, solely by reason of their serving in such capacity." The Policy, however, contains an exclusion which states: "The Insurer shall not pay Loss . . . (I) of an Insured Person based upon, arising

from, or in any way related to such Insured Person's service, at any time, as a director, officer, trustee, regent, governor, or equivalent executive or as an employee of any entity other than an Insured Entity. . . ."

Twin City provided coverage for Bella Vista and controlled its defense in the Underlying Action. But, Twin City initially denied coverage for Palmer and refused to defend him. After Palmer contested the denial, Twin City agreed to defend him under a reservation of rights until it was established that Palmer was not entitled to coverage under the Policy. Following the dismissal of Bella Vista, with prejudice, Twin City withdrew its defense of Palmer. Palmer brought this coverage action for breach of contract and bad faith, as well as seeking a declaratory judgment that Twin City had a duty to defend and indemnify him. Twin City filed a Motion to Dismiss, which the Court converted to a Motion for Summary Judgment.

## II. LEGAL STANDARD

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute exists "when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). In ruling on a motion for summary judgment, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Notably, in instances where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a

4

sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986).

**III.    Analysis**

Bella Vista's insurance policy with Twin City provides coverage to individuals for wrongful acts "committed by an Insured Person, solely by reason of their serving in such capacity." It necessarily follows that an Insured Person is not covered for actions taken in any capacity other than "by reason of their serving" on the Board of Bella Vista.

Twin City initially defended Palmer under a reservation of rights because the Underlying Complaint alleged facts implicating Palmer in his role as President of Bella Vista. More specifically, the allegations were that Palmer conspired with Bella Vista to bring the conservatorship petition and that Palmer filed the action with "the tacit approval" of Bella Vista. An insurer's potential duty to defend is "determined *solely* by the allegations of the complaint in the [underlying] action." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (emphasis in original).

*A.    Twin City's Duty to Defend Terminated Upon Bella Vista's Dismissal With Prejudice*

Even though the duty to defend attaches upon the allegations of a complaint, it can terminate during the course of litigation. *See Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 218 (3d Cir. 1986) ("[T]here is no principle of Pennsylvania law that the duty to defend automatically 'attaches' at the outset of the ligation and cannot afterwards terminate."). "An insurer must defend its insured until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673-74 (3d Cir. 2016) (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)). Put a different way, "it is the duty of the insurer to defend

until such time as the *claim is confined to a recovery that the policy does not cover.*" *Id.* at 673 (emphasis added); *see also West American Ins. Co. v. Lindepuu*, 128 F. Supp.2d 220, 229 (E.D. Pa. 2000). Coloring the analysis of whether the duty to defend terminates, a court must "liberally construe" any ambiguity "in favor of the insured." *Ramara,* 814 F.3d at 674.

An insurer must point to "absolutely clear" facts to show that a claim has been confined to a recovery that the policy does not cover. *Id.* at 673-74. Such "absolutely clear" evidence is present where the underlying plaintiff drops an insured claim, *see Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959) (citing *Lee v. Aetna Cas. & Sur. Co.*, 178 F.2d 750, 753 (2d Cir. 1949)), a judge issues findings establishing that a lawsuit concerned an uncovered claim, *see Lowenchuss v. Home Ins. Co.*, 1990 WL 126110, at *2 (E.D. Pa. 1990), *aff'd*, 931 F.2d 50, 50 (3d Cir. 1991), and where a plaintiff files pre-trial narrative or answers to interrogatories which clarify that the lawsuit concerned an uncovered claim. *See, e.g., Charter Oak Fire Ins. v. Sumitomo Marine and Fire Ins.*, 760 F.2d 267, 272 (3d Cir. 1984) (involving a pre-trial narrative); *Lindepuu*, 128 F. Supp. at 230 (involving discovery disclosures). One court has found evidence is "inconclusive" where an insurer cited answers to interrogatories which stated that the covered defamation claims occurred outside of the insured's coverage period because the same answer stated that defamations occurred on "[o]ther occasions yet to be determined." *St. Paul Fire & Marine Ins. Co. v. Appalachian Ins. Co*., 1988 WL 124605, at *1 (E.D. Pa. Nov. 18, 1988).

Here, the evidence clearly establishes that Twin City had no duty to defend Palmer after the court dismissed Bella Vista with prejudice from the Underlying Action. By sustaining Bella Vista's preliminary objections, and dismissing it from the case, the court could only have found that Bella Vista was not liable for any wrongful conduct. In doing so, the court necessarily

rejected any theory that Bella Vista was liable for "tacit[ly] approv[ing]" Palmer's actions in filing the conservatorship petition or engaging in a conspiracy with Palmer to file the petition. Therefore, Palmer's alleged wrongful acts were not taken "solely by reason of [his] serving" as a member of the Board of Bella Vista.

This conclusion finds further support in that Bella Vista's preliminary objections made a single argument: it was not involved in filing the conservatorship petition and thus not liable. To that end, Bella Vista submitted an affidavit from a board member stating that Palmer was not an officer of, nor a member of any committee, within Bella Vista at the time Palmer filed the conservatorship petition. It also stated that Bella Vista in no way participated in, endorsed, ratified or was involved with the March 2012 petition. Palmer does not contest either of these allegations, thus no issue of material fact exists.[1]

Judicial fact-findings from the underlying action are not required in order for a later court to find "absolutely clear" evidence that a claim is not covered. "Absolutely clear" evidence that a claim is no longer covered can be found by an interpretation of pre-trial narratives and discovery disclosures even though the underlying court did not issue orders. *See Charter Oak Fire Ins.*, 760 F.2d at 272 (involving a pre-trial narrative); *Lindepuu*, 128 F. Supp. at 230 (involving discovery disclosures). Contrary to Palmer's interpretation, plaintiffs in those cases did not "explicitly withdraw[]" their covered claims. Rather, the courts interpreted their filings to find that the case concerned the uncovered claims. While Palmer argues that the court should not broadly interpret an order with no opinion, he does not offer a contrary interpretation of the

---

[1] Palmer contends that he was a member of the Board for at least several months after resigning as Vice President in July 2011. The precise date on which he resigned from the Board is immaterial because all parties agree that he was not a member of the Board of Bella Vista, or acting on its behalf on March 10, 2012, when he filed the conservatorship petition.

order which suggests any other reason to dismiss Bella Vista other than that the court found that Bella Vista was not liable.

To the contrary, following Bella Vista's dismissal, Palmer filed an answer to the Underlying Complaint stating, unequivocally, that "Palmer's involvement with [Bella Vista] is not relevant for the purposes of Plaintiffs' claim related to the [conservatorship petition]." Palmer's admission that Bella Vista is not relevant to the conservatorship petition provides additional evidence to demonstrate that Twin City had no duty to defend. *See Lowenschuss*, 1990 WL 126110, at *3 (considering plaintiff's admission that the underlying action was primarily concerned with an uncovered claim to determine the insurer had no duty to defend). The underlying court's dismissal of Bella Vista with prejudice, Bella Vista's undisputed declaration in support of its preliminary objections, and Palmer's admission that Bella Vista is "not relevant" to the conservatorship dispute demonstrate 'absolutely clear' evidence that the Underlying Action involved a claim that was not covered by Bella Vista's insurance policy.

*B. Palmer's Acts Prior to Resigning from the Board are Not Relevant*

Mr. Palmer's actions while he was involved with Bella Vista are not relevant for his liability in the underlying action. The Underlying Action was for wrongful use of civil proceedings, concert of action, conspiracy, and abuse of process in bringing the conservatorship petition. The conspiracy count, which Palmer contends encompasses actions taken prior to the conservatorship petition specifically alleged a conspiracy "to bring the Petition Action," "to profit from the imposition of a conservatorship," and improper "conduct in bringing the Petition Action and continuing to prosecute [it]."

One of the essential elements of a civil conspiracy, under Pennsylvania law, is that the parties "act[ed] with a common purpose to do an unlawful act. . . ." *McGuire v. Shubert*, 722

A.2d 1087, 1092 (Pa. Super. 1998), *app. denied*, 743 A.2d 921 (Pa. 1999). The unlawful act, as stated in the Underlying Complaint, was "bring[ing] the Petition Action." Thus, the conspiracy count could only encompass actions taken prior to bringing the petition if the "common purpose" of those actions was to "bring the Petition Action." However, it is undisputed that Bella Vista did not know that Palmer was filing the conservatorship petition until he told Bella Vista that he had filed it. Palmer even testified in his deposition that he deliberately kept the information about the petition secret from Bella Vista prior to filing it. Thus, the sporadic actions Palmer took with respect to 614 Kater Street while he was on the Board of Bella Vista were not part of the conspiracy to bring the petition because Bella Vista did not share the common purpose to bring about the petition, of which it had no knowledge.

The evidence is conclusive that Palmer did not act in his Insured Capacity when he filed the conservatorship petition. Palmer admits that he was not a director or officer of Bella Vista on the date on which the conservatorship petition was filed; that he did not ask Bella Vista for approval before filing the petition; and that Bella Vista did not provide its permission. Furthermore, Bella Vista was also not a petitioner in the conservatorship action. Palmer's citations to various portions of the trial transcript in the Underlying Action do not raise any dispute of material fact. None of the trial transcripts state that Palmer acted as a member of the Board of Bella Vista when he filed the conservatorship petition. In fact, the few trial transcripts that do mention Bella Vista are just the kind of remarks about a witness' background one might expect in introductions at trial.[2]

---

[2] Palmer cites one excerpt from his testimony in the Underlying Action in which he stated that he did not become involved with Kater Street "until directed by the board of directors." This statement does not raise a dispute over a material fact because the testimony involved his conduct in contacting the City of Philadelphia about property violations in 2009, 2010, and 2011 and in speaking to residents of Kater Street at the behest of the Board. Those actions were relevant background for the Underlying Action, but not the basis of any claim, which concerned the conservatorship petition.

9

*B. Twin City's Dual Service Exclusions Also Bars Recovery*

Bella Vista's insurance policy specifically excludes any loss "based upon, arising from, or in any way related to such Insured Person's service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of an entity other than an Insured Entity. . . ." Under Pennsylvania law, "the insurer . . . bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009). If policy exclusion applies, Twin City has no duty to defend or indemnify Palmer. *Id.*

It is undisputed that Palmer was President and owner of STI and that he filed the conservatorship petition at least, in part, in his capacity as President and owner of STI. It is also undisputed that STI was found liable along with Palmer in the underlying action. STI is not an Insured Entity under the Policy. The Dual Service Exclusion therefore bars any coverage of Palmer's claim to the extent that he filed the petition in his capacity as President and owner of STI. *Cont'l Cas. Co. v. Adams*, 2003 WL 22162379, at *7 (M.D. Pa. Sept. 12, 2003) (interpreting a nearly identical exclusion to prevent coverage of wrongdoing involving actions of an insured person taken in their capacity as a director of an uninsured entity).

Palmer argues that the "Dual Service Exclusion" only bars coverage when individuals serve in two different capacities at the same time. The clear text of the exclusion, however, bars coverage if an Insured Person serves as an officer of another entity "at any time." Notably, the policy at issue in the case Palmer relies on to argue that the Dual Service Exclusion only applies to simultaneous directorships did not include the "at any time" language included in the policy at issue here. *Id.* at 3. Where "the terms of the policy are clear and unambiguous, the general rule

10

in Pennsylvania is to give effect to the plain language of the agreement." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997).[3]

The Dual Service Exclusion excuses Twin City from defending Palmer in the Underlying Action.

*C. Twin City Has No Duty to Indemnify Palmer*

An insurer does not have a duty to indemnify where it does not have a duty to defend. *See Ramara*, 814 F.3d at 673. Because Twin City had no duty to defend Palmer following the dismissal of Bella Vista from the Underlying Action, it necessarily follows that Twin City has no duty to indemnify.

*D. Plaintiff's Bad Faith Claim is Not Supported*

Palmer also brings a claim alleging that Twin City acted in bad faith in violation of 42 Pa. Stat. Ann. § 8371 when it withdrew its defense and denied coverage in the Underlying Action. A refusal to provide a defense or to indemnify a party when the policy provides for coverage violates Pennsylvania's bad faith insurance statute when the refusal lacks good cause. *Frog, Switch &Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). "Where there is no duty to defend, there was good cause to refuse to defend against a suit." *Id*. Because Twin City did not owe a duty to defend or indemnify, it follows that the claim for bad faith withdrawal of defense fails as well.

For the above reasons, Twin City's Motion for Summary Judgment will be granted in its entirety. All claims against Twin City shall be dismissed.

An appropriate order follows.

---

[3] Palmer also seems to argue that Twin City should have raised the Dual Service Exclusion earlier. However, an insurer is not obligated to assert all potential defenses in an initial denial letter. *See Easy Corner, Inc. v. State Nat'l Ins. Co*., 154 F. Supp.3d 151, 155 n.3 (E.D. Pa. 2016).

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

Date: 11.17.17